GRACE YETLEY, Appellant, v. OLEN IRONS, Appellee; TAMA
STATE BANK, Intervener, Appellee.

No. 46946.

JANUARY 14, 1947.

O. H. Allbee, of Marshalltown, for appellant.

Hyland & Hyland, of Tama, for appellees.

SMITH, J.—Plaintiff secured a judgment against defendant,
Olen Irons, in 1936. On December 8, 1942, she caused execution
to issue and to be levied upon certain cattle which said defendant
was advertising for sale on that date.

On September 28, 1942, defendant, Irons, had executed to
intervener, Tama State Bank, a chattel mortgage upon certain
therein-described cattle. The mortgage was filed for record

September 30, 1942, but it is conceded that fact afforded no constructive notice to existing creditors and subsequent purchasers without notice, due to indefinite description of the mortgaged cattle and failure to give their location. Intervener and defendant claimed the cattle levied on by plaintiff were covered by said mortgage.

The sale was held after all parties stipulated that the proceeds should be impounded and held in trust in lieu of the cattle, pending determination of their respective rights, claims, and liens.

Plaintiff testified she had no knowledge on or before December 8, 1942, of intervener's mortgage or of the record thereof. Her testimony was undisputed. Intervener's cashier, who drew the mortgage, testified the proceeds of the loan were placed to the credit of defendant's checking account to be used to pay for the cattle described in the mortgage.

Plaintiff claimed she was an existing creditor by virtue of the levy of execution and that, being without notice of intervener's mortgage, she is protected against it under our recording statute, section 556.3, Iowa Code, 1946 (section 10015, Code, 1939).

Intervener and defendant contended: 1. That the mortgage was for money used in the purchase of the cattle that were levied on and thereafter sold under the stipulation; and 2, that being a purchase-money mortgage it was good against plaintiff as an existing creditor without notice.

The trial court sustained these contentions and ordered that the proceeds of the sale be applied first to the payment of intervener's mortgage and the balance, after payment of costs, applied on plaintiff's judgment. Plaintiff appeals. Defendant, Irons, also served notice of appeal from a part of the judgment but has filed no brief as appellant and his appeal is dismissed. There were no pleadings. The case was by stipulation tried to the court without jury.

■ I. The present appeal might be disposed of by consideration of the first proposition. The evidence does not sustain the trial court's finding that "This is a purchase money mortgage." In the first place, the seventeen head of cattle as described in the mortgage are not identified as including the

fourteen head described in the sale bills and advertisements and levied on and sold under the stipulation. The descriptions are too different to establish such identity without extraneous proof and such proof is lacking. It is not furnished by the agreed statement of facts and neither defendant, Irons, nor the cashier of the intervener bank testified on the subject.

Furthermore, the evidence even fails to establish that the proceeds of the mortgage loan were in fact used in the purchase of the cattle described in the mortgage. The only testimony of defendant, Irons, on this subject is contained in one question and answer: "Q. Was it [the mortgage] given for the purchase price of the animals described in the mortgage? A. It was given for the purchase of cattle—this mortgage was given." *He did not say "these" cattle or the "cattle covered by the mortgage,"* and he was probably the only person who could have so testified if it was a fact.

The testimony of intervener's cashier is merely to the effect that it was the *"understanding"* the money *"was to be used"* for the purchase of the cattle "that was on the mortgage." Probably that was as far as he could testify of his own knowledge. He did not say the money *was* so used. No one so testified.

All this falls short of supporting a finding that "this is a purchase money mortgage." But while this conclusion would dispose of the appeal it does not dispose of the case. On a re-trial it is possible the gaps we have pointed out in the testimony might be supplied and the trial court would again be confronted with the problem of the status of a purchase-money mortgage under the recording act.

II. We have, then, the definite question: Is a purchase-money chattel mortgage within the intendment of Code section 556.3 which provides:

"No * * * mortgage of personal property where the * * * mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed * * * and * * * duly recorded * * *"?

The trial court's decision and appellees' argument are based expressly upon the majority decision in In re Estate of

Lewis, 230 Iowa 694, 706, 298 N. W. 842, 848, 137 A. L. R. 562. In that case it was held that an unrecorded purchase-money mortgage was good as against the administratrix of an insolvent mortgagor's estate, notwithstanding the recording statute above quoted.

The trial court here viewed that as a holding that a purchase-money mortgage is never within the intention of the recording statute. In support of this view it is pointed out the dissenting opinion in the Lewis case vigorously urged that the majority opinion "appears to hold that the chattel mortgage was not subject to the provisions of the recording acts because it was a purchase-money mortgage." The headnote writer in 137 A. L. R. 562, where the case is reported, and the writer of the annotation following seem to put the same construction upon the language of the Lewis opinion.

In the Lewis case it was actually held the general creditors, represented by the administratrix of a deceased insolvent mortgagor's estate, could not claim ownership of the mortgaged property superior to the interest of the mortgagee under an unrecorded purchase-money mortgage. While the language of the opinion in that case is subject to the interpretation that has been put upon it, we now hold that a purchase-money chattel mortgage is subject to the provisions of the recording act, the same as any other chattel mortgage and any expressions to the contrary contained in that opinion are expressly overruled. As said in Van Eepoel Real Estate Co. v. Sarasota Milk Co., 100 Fla. 438, 452, 129 So. 892, 897:

"It is as much the duty of a purchase money mortgagee, as of any other mortgagee, to promptly record his mortgage if he would preserve his priority over the rights of innocent purchasers or creditors subsequently arising * * * ."

The plain language of the recording statute itself compels this holding: "*No* * * * *mortgage* of personal property * * *." There is no exception, no qualification. By its very terms it applies to *every* chattel mortgage.

As a matter of fact, in Slimmer & Thomas v. Lawler, 205 Iowa 813, 218 N. W. 516, the prior right of a subsequent pur-

chaser without notice was upheld as against a purchase-money mortgage, apparently without any contention being made, or consideration given, to the possibility that such a mortgage was different from other mortgages in the eyes of the recording act. See, also, Westinghouse Co. v. McGrath, 131 Iowa 226, 108 N. W. 449, 117 Am. St. Rep. 421.

In Albert Pick & Co. v. Wilson, 8 Cir., Iowa, 19 F. 2d 18, there was involved the claim of a purchase-money chattel mortgage to preference over general creditors in re the bankruptcy of the mortgagor. The case originated in Iowa and involved the statute we are here considering. The circuit court of appeals held that by the express provision of the bankruptcy statutes the trustee had the rights of a levying creditor (this holding has since in effect been overruled. In re Pointer Brewing Co., 8 Cir., Iowa, 105 F. 2d 478) and that as the mortgage was not properly recorded the holder was not entitled to preference. Again, however, there seems to have been no thought that the mortgage stood in any favored position because given for purchase price.

We have held a purchase-money real-estate mortgage inferior to the rights of an innocent subsequent purchaser at execution sale under a judgment which antedated the mortgage, because the mortgage, though recorded, failed to reveal it was for purchase money and the purchaser had no notice of that fact. Keefe v. Cropper, 196 Iowa 1179, 194 N. W. 305. And see Davis v. Lutkiewiez, 72 Iowa 254, 256, 33 N. W. 670.

We realize these various Iowa decisions are not directly in point or conclusive here. However, in the Van Eepoel case, supra, 100 Fla. 438, 129 So. 892, the Florida court was considering a recording statute not materially different from our own and held squarely that it applied to a purchase-money mortgage. And in Thorpe v. Helmer, 275 Ill. 86, 90, 113 N. E. 954, 956, it is said that in determining priorities under the real-estate recording act "The question is not affected by the fact that the mortgage was given for purchase money."

We find confirmation of our position in the very next Code section (following the one under consideration) pertaining to conditional sales:

"No sale * * * wherein the transfer of title * * * is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee * * * in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor and vendee * * * and * * * duly recorded." Section 556.4, Iowa Code, 1946 (section 10016, Code, 1939).

The analogy between a conditional sale, under which the buyer obtains possession, and a sale in which the seller delivers possession and takes back a purchase-money mortgage, is apparent. In each the vendee is by possession clothed with apparently complete ownership. The vendor retains or is given back an interest as security. If, in order to protect against subsequent purchasers or existing creditors without notice, he is required in one case to record the evidence of his right, we should not in the other case read into the statute an exception that would ignore the analogy. In each the plain purpose of the statute is to protect innocent third persons from secret rights retained by or granted to the vendor—rights that are belied by an appearance of complete and unburdened ownership.

Upon the considerations we have stated, the decision of the trial court must be and is reversed and remanded for judgment, applying the proceeds of sale first to the satisfaction of appellant's judgment.—Reversed and remanded.

All JUSTICES concur.