## ROLLINS v. REPPER.

No. 5997.

District Court, E. D. Michigan, S. D.

Feb. 1, 1947.

William Murray, of Detroit, Mich., for plaintiff.

Carl P. Roehl and Colby & Costello, all of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. This action was instituted October 7, 1946, by Herbert V. Rollins, trustee in bankruptcy of the estate of Raymond Christian Fraley, bankrupt, to set aside an allegedly preferential transfer made by the Bankrupt to the defendant, William F. Repper, within 4 months prior to the filing of a petition in bankruptcy. At the time of institution of the present action, the parties resided within this Division of this District.

2. On April 12, 1946, said bankrupt filed in this court his voluntary petition in bankruptcy, the same bearing bankruptcy case number 30,998. On the same day, he was adjudicated a bankrupt. With the exception of transactions hereinafter enumerated, his financial condition at that time was substantially the same as it had been since the Fall of 1945, namely, he owed debts of upwards of $13,500, and had non-exempt assets of some $700. The debts were owed to some 44 general, unsecured creditors, practically all of whom were business creditors, and their debts had been contracted and accrued between February, 1944, and October, 1945, inclusive.

3. For some 3 years, the bankrupt and the defendant had been business associates. The bankrupt owned and operated a tool business in Detroit under the assumed name of Premier Tool Company, principally as a result of which his financial involvement arose. In this business, the defendant was employed as a tool salesman by the bankrupt for over a year at a salary of $500 per month. This employment terminated in June, 1945, at which time the bankrupt was unable to meet this monthly salary payment to the defendant.

During the period of this employment, the bankrupt and the defendant formed and operated in Detroit an independent corporation, the Electro-Tool Company, of which the defendant was president and the bankrupt was secretary. Although this corporation showed book profits for some months, its income never equalled expenses, and it was voluntarily dissolved in December, 1944. Prior and subsequent to this dissolution, the bankrupt personally discharged many outstanding obligations of this corporation, amounting to several thousand dollars.

The Premier Tool Company business continued to fail after the defendant left the bankrupt's employ in June, 1945. The bankrupt mortgaged this business to the Union Investment Company, in connection with which mortgage he made an assignment of accounts receivable in August, 1945. On November 1, 1945, this mortgage was foreclosed, which wiped out the interest of the bankrupt in the accounts receivable, machinery and other tangible assets of the business. The purchaser at the foreclosure sale was another of the bankrupt's former salesmen, who, since that time, has carried on the same type of business at the same location.

4. The bankrupt had himself and 6 other persons dependent upon him for support. Between October 30, 1945, and February

22, 1946, the bankrupt had no employment, assets or source of income, other than $700 assets scheduled in his bankruptcy petition, a $3300 income tax refund claim, and he was employed by defendant as a salesman in a used car business which the defendant had started in June, 1945, upon leaving the bankrupt's employ. During this period the bankrupt spent his time at the defendant's used car lot, and sold 3 or 4 used cars, for which he received a commission of $25 per car. During this period the defendant knew, and admitted on the stand that he knew, that the Union Investment Company had a mortgage on the bankrupt's tool company business; that this mortgage had been foreclosed on November 1, 1945; that a former co-employee had purchased the business at foreclosure sale and thereafter conducted the same type of business at the same location with the same machinery and equipment; that the bankrupt had 7 people to support; and that the bankrupt had no employment or source of income other than his $25 per car salesman job with defendant, plus his pending $3300 income tax refund claim.

5. Between September, 1945, and February, 1946, inclusive, the bankrupt borrowed $2200 from the defendant for living expenses. These loans commenced some 2 months prior to the foreclosure of the mortgage mentioned above. This $2200 was borrowed at various times, and in various amounts, averaging about $400 per month, and the transactions were verbal. In making the loans, the defendant knew, and admitted on the stand that he knew, that the bankrupt needed the money for living expenses. As to these loans, the defendant was a general, unsecured creditor of the Bankrupt.

6. In February, 1946, the bankrupt received an income tax refund in the amount of approximately $3300, out of the proceeds of which he repaid the sum of $2200 in cash to the defendant on February 22, 1946, which was within 4 months of the filing of the bankruptcy petition on April 12, 1946. This repayment of $2200 is the allegedly preferential transfer here attacked.

7. The bankrupt was insolvent at the time of the repayment of $2200 to defendant on February 22, 1946, at which time his past due debts exceeded his assets by at least $12,000, and the repayment constituted a transfer of money to the defendant, a general unsecured creditor of the bankrupt, within 4 months of filing petition in bankruptcy, which transfer enabled the defendant to obtain repayment of his debt in full and to obtain a greater percentage of his debt than other creditors of the same class.

8. The bankrupt and the defendant both testified as witnesses, and each denied that the defendant knew of the bankrupt's other debts or insolvency, or that the defendant had made any inquiry as to the bankrupt's other debts or insolvency, or that they had had any discussion relative to the bankrupt's other debts, assets or insolvency, prior to the time the Bankrupt filed his petition in bankruptcy on April 12, 1946. The plaintiff contended, and the defendant disputed, that on February 22, 1946, the defendant had reasonable cause to believe the bankrupt to be insolvent.

9. This testimony that the bankrupt and the defendant did not discuss the bankrupt's debts or insolvency following the foreclosure of the mortgage on the Premier Tool Company business seems incredible in the light of their association, interest and dealings. However, from the business and financial association and dealings between these two men, and the defendant's admitted knowledge of the bankrupt's financial circumstances at the time of the repayment in full of the $2200 debt, as heretofore outlined, the defendant had at least reasonable cause to believe that the bankrupt was insolvent on February 22, 1945. This was not a mere suspicion or apprehension of insolvency or cause to suspect insolvency, but reasonable cause based on knowledge of facts which should have led a person of ordinary or reasonable prudence to the belief that the debtor was insolvent, and which should have put a person of ordinary or reasonable prudence upon inquiry as to the bankrupt's insolvency.

10. The repayment to the defendant of $2200 on February 22, 1946, was made by the bankrupt, while insolvent, with intent to

prefer the defendant over all his other general unsecured creditors.

11. There was no showing of any demand upon defendant for return of the $2200 prior to the institution of this action on October 7, 1946.

12. Defendant did not reach 21 years of age until August, 1946, and he interposed infancy as a special defense to this action.

### Conclusions of Law.

1. This court has jurisdiction and venue in this plenary proceeding to avoid a preferential transfer, brought by a trustee in bankruptcy against a defendant who resided in this Division of this District at the time of institution of this plenary proceeding. 11 U.S.C.A. §§ 1 (10), 46, 96, sub. b; 28 U.S.C.A. § 112.

2. Infancy of the defendant is no defense to an action by a bankrupt's trustee to set aside an unlawful preference under the Bankruptcy Act. Cunningham v. Brown, 1924, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873.

3. A payment of money to a creditor, made by a debtor while insolvent and within 4 months before the filing by him of a petition in bankruptcy, which enables such creditor to obtain a greater percentage of his debt than some other creditor of the same class, is a preferential transfer within the meaning of the Bankruptcy Act. 11 U.S.C.A. 96, sub. a.

4. Any preferential transfer made within 4 months of filing of bankruptcy petition may be avoided by the bankrupt's trustee if, at the time when the transfer is made, the creditor receiving the preference either knows or has reasonable cause to believe that the debtor is insolvent. 11 U.S.C.A. 96, sub. b.

5. Where, as here, an insolvent debtor makes a preferential transfer to a creditor within 4 months of filing petition in bankruptcy, which enables such creditor to obtain a greater percentage of his debt than some other creditor of the same class, and, at the time of the transfer, the creditor has knowledge of facts which should have led a person of ordinary or reasonable prudence to the belief that the debtor was insolvent, beyond a mere suspicion or apprehension of insolvency or cause to suspect insolvency, and the creditor makes no inquiry as to the solvency or insolvency of the debtor, the creditor is charged with knowledge of the insolvency which an inquiry should have elicited and the creditor has reasonable cause to believe that the debtor is insolvent. Grant v. First Nat. Bank, 1878, 97 U.S. 80, 24 L.Ed. 971; Prudential Ins. Co. of America v. Nelson, 6 Cir., 1938, 96 F.2d 487; Canright v. General Finance Corp., 7 Cir., 1941, 123 F.2d 98; In re Cox, 7 Cir., 1943, 132 F.2d 881.

6. In an action to set aside a preferential transfer of money, interest runs from the date of remand upon the defendant, and where, as here, no demand is made prior to institution of suit to avoid the transfer, the commencement of the action is itself a demand, and interest runs from the date of such commencement of action. Kaufman v. Tredway, 1904, 195 U.S. 271, 25 S.Ct. 33, 49 L.Ed. 190, 192; White Co. v. Wells, 6 Cir., 1930, 42 F.2d 460.

7. The legal rate of interest in Michigan upon an unwritten obligation is 5% per annum. M.S.A. § 19.11, Comp.Laws 1929, § 9239.

8. It therefore follows that the transfer to the defendant of $2200 by the bankrupt on February 22, 1946, when the bankrupt was insolvent and the defendant had reasonable cause to believe that the bankrupt was insolvent, is a voidable preferential transfer, which should be avoided. Consequently, a judgment is being entered simultaneously herewith in favor of plaintiff trustee and against defendant creditor for the sum of $2200, with interest thereon at 5% per annum from October 7, 1946, the date of commencement of this action.

### Judgment.

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered and adjudged that the transfer of the sum of $2200 by Raymond Christian Fraley to the defendant, William F. Repper, on February 22, 1946, be, and the same is hereby avoided and set aside.

It is further ordered and adjudged that the plaintiff, Herbert V. Rollins, trustee of the estate of Raymond Christian Fraley, bankrupt, recover from the defendant, William F. Repper, the sum of $2200, together with interest thereon at 5% per annum from October 7, 1946, and his taxable costs of this action.