**In the Matter of COLLINS & KISER CONSTRUCTION COMPANY, Bankrupt.**
**No. 13–275.**

United States District Court
S. D. Iowa,
Central Division.
March 21, 1962.

Donald A. Wine, U. S. Atty., Des Moines, Iowa, and John M. Youngquist, Department of Justice, Washington, D. C., for the United States of America.

Charles King, Marshalltown, Iowa, for Trustee, George W. Hinshaw.

D. J. Fairgrave and Mark W. Putney (of Bradshaw, Fowler, Proctor & Fairgrave), Des Moines, Iowa, for Employers Mutual Casualty Co.

STEPHENSON, Chief Judge.

This matter is before the Court on a petition for review of the Referee's Order allowing the claim of Employers

Mutual Casualty Company (hereinafter referred to as the Surety) as a secured claim. Petitions for review have been filed by the Trustee and the United States of America challenging findings of fact and conclusions of law rendered by the Referee, in which it was adjudged that a claim of the Surety in the amount of $27,032.54 was a secured claim, entitled to payment in full, prior to the claims of the trustee in bankruptcy and prior to the claim of the United States for due and unpaid federal withholding and unemployment taxes of the bankrupt.

Prior to April 1, 1959, the date bankruptcy proceedings were initiated herein, the bankrupt (Collins & Kiser Construction Company, successor in interest to the Barker-Rose Construction Company) was engaged in the construction business, particularly highway construction projects for the Iowa State Highway Commission. Upon application of the bankrupt, the Surety issued several standard performance bonds which were filed by the bankrupt on various construction projects it had contracted to perform during the year 1958. On each of these bonds the Employers Mutual Casualty Company was the Surety and the bankrupt the principal.

In each of the written applications for performance bonds the bankrupt gave the Surety a general assignment of assets and agreed to indemnify the Surety against losses incurred by Surety by reason of executing said bond.[1]

During the fall of 1958 the bankrupt failed to pay current obligations to its subcontractors and materialmen, who filed claims with the Iowa State Highway Commission. The Commission notified the Surety of each claim filed. Thereafter the Surety conferred with representatives of bankrupt and on December 3, 1958 bankrupt executed two chattel mortgages on certain pieces of road building equipment to secure notes given by bankrupt to the Surety for the advancement of funds by the Surety to pay the various suppliers' claims. The Surety recorded these two mortgages on December 11, 1958. On December 3, 1958, the Surety also received assignments from bankrupt of all amounts due or to become due from the Iowa State Highway Commission on the road projects on which the Surety's bonds had been issued. On or about the same date the Surety also took chattel mortgages and received title certificates on other items of equipment and vehicles of the bank-

1. The parties agreed that pertinent provisions of the bonds were as follows:
"The undersigned (applicant) does * * * hereby agree * * * as follows:
* * * * *
"Fourth, to assign, transfer and set over, and does * * * hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, * * * such assignment to become effective as of the date of said contract bond but only in event of (1) any abandonment, forfeiture or breach of said contract * * * or (3) of a default in discharging such other indebtedness or liabilities when due * * *: (a) All the right, title and interest of the undersigned in and to all subcontracts let or to be let in connection with said contract and in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site of said work or elsewhere, for the purpose thereof, including as well materials purchased for or chargeable to such contract, which may be in the process of construction, or storage elsewhere, or in transportation to said site; (b) All the rights of the undersigned in, and growing in any manner out of, said contract, or extensions, modifications, changes or alterations thereof or additions thereto, or in, or growing in any manner out of, said bond or bonds, or any of them; (c) All actions, causes of actions, claims and demands whatsoever which the undersigned may have or acquire against any subcontractor, laborer or material man, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or an (sic) account of said contract; (d) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that thereafter may become due; * * * *".

rupt. In addition, the Surety secured from one of the officers of the bankrupt company a real estate mortgage on real estate owned individually by said officer. None of these mortgages, transfers and assignments were recorded, other than the two hereinbefore mentioned.

On April 1, 1959, less than four months after the transfers of December 3, 1958, involuntary bankruptcy proceedings were initiated against bankrupt in the District Court and in due course said Company was adjudicated bankrupt and a trustee appointed. It was stipulated by the parties during the hearings before the Referee that the bankrupt was in fact insolvent within the meaning of Section 1(19) of the Bankruptcy Act, 11 U.S.C.A. § 1(19), on December 3, 1958.

The Surety presented claims to the trustee in the total amount of $27,032.54, which the referee found to be the total expended by the Surety, under its bonds in satisfying claims against the bankrupt arising out of the road projects less amounts received by the Surety directly from the Iowa State Highway Commission on the contracts by virtue of bankrupt's assignments. The Surety alleged that this debt was totally secured by virtue of the various mortgages, transfers, assignments and agreements hereinbefore set out. The Trustee contended that the Surety was an unsecured creditor of the bankrupt because said mortgages, transfers, assignments and agreements constituted voidable preferences and were further of no effect as against the Trustee since not perfected as of the date the petition in bankruptcy was filed as is required under the applicable provisions of the Bankruptcy Act. The United States asserts claims for withholding taxes and unemployment taxes totalling $7,332.59, exclusive of statutory interest, which were variously assessed with liens arising therefore on February 20, April 29, and May 27, 1959. The United States supports the argument of the Trustee, and with respect to its tax liens, claims priority over all unsecured creditors.

The Trustee's liquidation of the bankrupt's estate brought in approximately $30,000.00. Aside from the Surety's claim, unsecured claims totaled approximately $86,000.00. The sale of heavy equipment on which the Surety held a chattel mortgage was for $12,575.00. The sale of motor vehicles, also covered by the Surety's chattel mortgages totaled $4,015.00.

The Referee's Order allowed the Surety's total claim of $27,032.54 as a secured claim prior in right to the claims of both the Trustee and the United States. The Trustee and the United States in seeking review of the Referee's Order take exception to the following findings and conclusions of the Referee:

"2. There was no reasonable cause for Employers Mutual Casualty Company to believe the debtor-bankrupt was insolvent at the time of taking of the mortgages and transfers in question.

"3. The mortgages and transfers were not for or on account of an antecedent debt.

"4. The assignment contained in the application for the bond is a present assignment and the equitable lien of the Surety relates back to the date of the bond and application therefor."

This Court will consider these findings and conclusions in reverse order. It is the opinion of the Court that the Referee erred in concluding as a matter of law that the general assignment to the Surety under the performance bond application created an equitable lien giving the Surety's total claim secured status prior in right to the claims of the Trustee and the United States.

■■■ The general assignments contained in the bond applications cannot prevail against the Trustee under Section 70, sub. c of the Bankruptcy Act, 11 U.S. C.A. § 110, sub. c, unless filed for record in accordance with Iowa law. In re Production Aids Co., 1961, S.D.Iowa, 193 F.Supp. 180. In that case, at pages 186–189, this Court discussed this subject in

detail and held the Trustee in bankruptcy prevailed over the vendor in a conditional sales contract which was not recorded. If the general assignments in the bond applications are to be considered security transactions they must be recorded as chattel mortgages pursuant to Code of Iowa 1958, Section 556.3, I.C.A., to be effective against the rights of the Trustee. See Yetley v. Irons, 1947, 238 Iowa 23, 25 N.W.2d 677, 168 A.L.R. 1159. For cases in other jurisdictions supporting this application of section 70, sub. c of the Bankruptcy Act, see City National Bank & Trust Co. v. Oliver, 1956, 10 Cir., 230 F.2d 686, 56 A.L.R.2d 749; McKay v. Trusco Finance Co. of Montgomery, Alabama, 1952, 5 Cir., 198 F.2d 431; Rosenbaum v. Century Indemnity Co., 1948, 2 Cir., 168 F.2d 917.

In United States Fidelity & Guaranty Co. v. United States, 1952, 10 Cir., 201 F.2d 118, at page 121, cited by the Referee, the United States was denied its claim for tax liens against the claims of a surety, in which the Court stated:

"When a surety is called upon and makes good under its contract of suretyship upon default of its principal, it acquires an equitable lien against any sum remaining in the hands of the one for whose protection the bond was written due to its principal upon discharge of his obligation under its bond. This equitable lien relates back to the date of the contract and is superior to a Government lien for unpaid taxes subsequent to the date of the contract of suretyship although prior to the date of payment by the surety."

In the instant case the Surety collected from the Iowa State Highway Commission sums due on contracts of the bankrupt on which the Surety fulfilled obligations of the bankrupt by paying off materialmen. There is no dispute as to these collections by the Surety. The Trustee makes no claim against the Surety as to these collections, which were applied to reduce the claim of the Surety

herein. It does not follow that the unrecorded assignments of bankrupt's machinery and vehicles remaining in bankrupt's possession and use are effective against the claims of the Trustee. An unperfected secret assignment cannot prevail against the Trustee.

The Court will next consider the Referee's finding and conclusion that "the mortgages and transfers were not for or on account of an antecedent debt". The Referee cites In re William P. Bray Co., 1954, D.Conn., 127 F.Supp. 627; Danais v. M. De Matteo Construction Co., 1952, D.N.H., 102 F.Supp. 874. In both of these cases the issue was over the right of a surety, as against a trustee in bankruptcy, to amounts which would have been payable to the bankrupt had he not defaulted in performance of his contract. The holdings in both cases were that such amounts were not the bankrupt's property since the sureties had superior equitable rights to such funds because of their performance and completion of the contracts. As previously pointed out herein, sums held by the Iowa Highway Commission on bankrupt's contracts were paid to the Surety and have been applied by the Surety to reduce its claim for sums expended in behalf of the bankrupt. There is no challenge to such offset. The issue here is as to whether certain transfers of the bankrupt's property taken by the Surety within four months of bankruptcy constitute voidable preferences.

We must consider the nature of the debts the Surety sought to secure by mortgages and assignments of bankrupt's property in December, 1958, within four months of bankruptcy. Under the terms of the performance bonds the Surety was obligated to pay the debts of the bankrupt arising in connection with the various road construction contracts upon bankrupt's default. Upon payment of those debts the Surety became subrogated to all creditors' claims against the debtor which it had paid. No new debt running from the bankrupt to the Surety was created. The debt arose when the bankrupt incurred its obligation to its credi-

tor, which upon bankrupt's default the Surety was bound to assume under the terms of the performance bond.

■■ It is well settled that a surety is a creditor under the Bankruptcy Act; that if the surety pays debts of his principal and the principal transfers property to the surety to indemnify or reimburse him, and the principal is insolvent at the time of the transfer, it is a preferential transfer and may be recovered by the trustee under Section 60 of the Bankruptcy Act (11 U.S.C.A. § 96) if other conditions therein prescribed for a recoverable preference concur. Davis v. Woolf, 1945, 4 Cir., 147 F.2d 629, 632; United Surety Co. v. Iowa Mfg. Co., 1910, 8 Cir., 179 F. 55, cert. denied 217 U.S. 606, 30 S.Ct. 696, 54 L.Ed. 900; Crandall v. Coats, 1905, N.D.Iowa, 133 F. 965. Since the Surety secured the mortgages and assignments from the bankrupt for the purpose of securing additional security for itself for obligations the Surety was bound under its bonds to pay, these transfers were preferential transfers and may be recovered by the Trustee if other conditions for a recoverable preference concur.

The transfers took place within four months of bankruptcy. It is conceded that at the time the transfers were made the bankrupt was insolvent. The only question remaining herein is whether the Referee was correct in finding, "There was no reasonable cause for Employers Mutual Casualty Company to believe the debtor-bankrupt was insolvent at the time of taking of the mortgages and transfers in question."

■ To overrule the above finding of the Referee this Court must determine that the finding of the Referee was clearly erroneous. General Order 47 (11 U.S.C.A. following section 53). Walker v. Commercial National Bank of Little Rock, Arkansas, 1955, 8 Cir., 217 F.2d 677. In the hearing before the Referee the burden was on the Trustee to establish that the creditor (Surety) receiving the preference had, at the time the trans-

fer was made, reasonable cause to believe the debtor-bankrupt was insolvent. Sec. 60, sub. b, 11 U.S.C.A. § 96, sub. b. Doyle Dry Goods Co. v. Lewis, 1925, 8 Cir., 5 F.2d 918, 919; Republic National Bank of Dallas v. Vial, 1956, 5 Cir., 232 F.2d 785, 789; Engelkes v. Farmers Coop. Co., 1961, N.D.Iowa, 194 F.Supp. 319, 323. The question before the Referee was one of fact, which must be determined from all of the facts and circumstances. Harrison v. Merchants National Bank, 1942, 8 Cir., 124 F.2d 871, 873–874; Engelkes v. Farmers Co-op. Co., 1961, N.D. Iowa, 194 F.Supp. 319, 328–330.

It is essential that the evidence before the Referee be reviewed. During September, October, November and prior to December 3, 1958, claims were filed with the Iowa State Highway Commission by the bankrupt's material suppliers totaling over $33,000.00. The Highway Commission promptly notified the Surety of these claims as they were filed. Law suits had been filed against the debtor-bankrupt and various inquiries and letters had been received by the Surety. This prompted the Vice-President of the Surety to confer with Wendell Collins and Ray Kiser, owners of the bankrupt, and obtain the disputed mortgages and assignments of machinery on December 3, 1958. The Surety also obtained a real estate mortgage from Wendell Collins on individual property he owned, but was unsuccessful in obtaining a similar personal mortgage from the other owner, Ray Kiser. The Vice-President of Surety contends, however, he was unaware the debtor was insolvent. He testified that during his conferences with them, he wrote down a list of the debtor's assets and liabilities as given to him and was of the opinion that they were solvent. Apparently no other inquiry was made. Not even a routine commercial credit report was requested, although there was every indication the bankrupt was, to say the least, in serious financial difficulty. In Engelkes v. Farmers Co-op. Co., supra, at p. 328, Judge Graven summarizes

the duty of creditor in this regard as follows:

"It is not essential that the creditor have actual knowledge of, or believe in, his debtor's insolvency. If he has knowledge of facts sufficient to put a prudent man on inquiry, he is chargeable with knowledge of the facts which such inquiry would disclose. Marks v. Goodyear Rubber Sundries, Inc., 2 Cir., 1956, 238 F.2d 533, 535, 62 A.L.R.2d 770; Dinkelspiel v. Weaver, D.C.1953, 116 F.Supp. 455, 462; Rollins v. Repper, D.C.1947, 69 F.Supp. 976, 979; 3 Collier, supra, par. 60.53. The Courts have been careful to distinguish a 'reasonable cause to believe' in a debtor's insolvency from mere apprehension or suspicion on the part of the creditor. Reasonable cause to suspect is not the equivalent of a reasonable cause to believe. Harrison v. Merchants National Bank, 8 Cir., 1942, 124 F.2d 871, 873; 3 Collier, supra, par. 60.53."

The Surety claims and the Referee found herein:

"6. That in the meeting between Mr. Wright acting on behalf of Employers Mutual Casualty Company and the bankrupt, Mr. Wright was persuaded that the bankrupt's difficulty at the time was not one of insolvency but rather a lack of working capital.

"7. The taking of the mortgages and transfers in question by Employers Mutual Casualty Company was simply a matter of good business and is customary throughout the bonding industry."

This Court recognizes that a shortage of ready cash does not in itself evidence insolvency. Engelkes v. Farmers Co-op. Co., supra, p. 329. Mere apprehension is not equivalent to good cause to believe that insolvency exists. Harrison v. Merchants National Bank, supra, 124 F.2d p. 873. The Court is reluctant to find contrary to the findings of the Referee who heard the testimony. However, upon a review of the entire record herein, the Court is compelled to hold that the finding of the Referee that there was no reasonable cause for the Surety to believe the bankrupt was insolvent at the time of the taking of the mortgages and transfers in question, was clearly erroneous. The fact that a large volume of claims were being filed by bankrupt's creditors with the Highway Commission with notice to the Surety over a three month period prior to the transfers in question, and the fact that law suits were filed and brought to the attention of the Surety was sufficient to put it on inquiry. Under the circumstances it was the duty of the Surety to make diligent inquiry as to bankrupt's solvency. Such an inquiry would have disclosed that in fact the bankrupt was then insolvent. A mere oral conference with the debtor and his assurance that he was merely short of ready cash is not a sufficient inquiry. To hold otherwise under the circumstances of this case would make the rule of little value.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

The Findings and Order of the Referee are reversed.

IT IS ORDERED THAT:

1. The claim of Employers Mutual Casualty Company in the amount of $27,032.54 is allowed as an unsecured claim.

2. The two recorded mortgages of Employers Mutual Casualty Company should be and are hereby set aside as voidable preferences.

3. The other mortgages, assignments and transfers of bankrupt's property to Employers Mutual Casualty Company are invalid as against the Trustee and the United States.

4. The claim of the United States for taxes should be satisfied in full out of the proceeds of the bankruptcy estate as provided in Section 64, sub. a of the Bankruptcy Act (11 U.S.C.A. § 104, sub. a).