## DOYLE DRY GOODS CO. v. LEWIS.

### In re WELCH.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1925.)

No. 6713.

1. **Bankruptcy ⊚⇒303(1)—Trustee in bankruptcy has burden of proving voidability of mortgage as preference.**

Trustee in bankruptcy, alleging that mortgage is voidable preference under Bankruptcy Act, §§ 60a and 60b, as amended (Comp. St. § 9644), because made when mortgagor was insolvent and when mortgagee had reasonable cause to believe that mortgage, if enforced, would cause preference of its claims, had burden of proof of such facts by preponderance of competent evidence.

2. **Bankruptcy ⊚⇒303(3)—Evidence held insufficient to establish insolvency of bankrupt at time of giving mortgage.**

Evidence *held* insufficient to establish mortgagor's insolvency at time of giving mortgage within four months preceding bankruptcy.

3. **Evidence ⊚⇒318(3)—Testimony as to taxes paid by bankrupt held incompetent on question of solvency at time of giving mortgage.**

Testimony as to taxes paid by bankrupt on personal property by witness, who had inspected county tax books, and real estate tax statements, consisting of unverified papers, *held* hearsay and incompetent on question of solvency of bankrupt at time of giving mortgages sought to be avoided.

4. **Appeal and error ⊚⇒837(11) — Appellate court not bound by findings of fact based on incompetent testimony.**

Appellate court is not bound by findings of fact of referee or lower court, where record indicates consideration of incompetent testimony.

5. **Bankruptcy ⊚⇒303(3)—Evidence held insufficient to show that mortgagee had reasonable cause to believe that mortgage would result in preference.**

Evidence *held* insufficient to show that mortgagee, at time of accepting mortgage, within four months preceding bankruptcy, had reasonable cause to believe that mortgage, if enforced, would cause preference of its claim.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

In the matter of the bankruptcy of W. A. Welch; H. V. Lewis, trustee. From a decree in effect declaring a mortgage a voidable preference and allowing the claim only as a claim of a general creditor, the Doyle Dry Goods Company, mortgagee, appeals. Reversed and remanded, with directions.

E. F. McFaddin, of Hope, Ark., for appellant.

Harry P. Daily, of Ft. Smith, Ark. (John P. Woods, of Ft. Smith, Ark., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and POLLOCK, District Judge.

SANBORN, Circuit Judge. The question in this case is whether or not a mortgage made by Mr. W. A. Welch for $6,764.25 on four pieces of his real estate, worth about $7,000, on May 9, 1921, and duly recorded on that day, to secure to Doyle Dry Goods Company, a corporation of Little Rock, Ark., payment for dry goods it had sold to him, constituted a voidable preference under sections 60a and 60b of the Bankruptcy Act of 1898 as amended. Section 9644 (a), (b), U. S. Comp. St. The answer to that question was conditioned by the answer to the questions: (1) Was Mr. Welch insolvent on May 9, 1921? and (2) did the dry goods company have reasonable cause to believe on that day, which was within four months prior to the filing of the petition in bankruptcy against Mr. Welch in August, 1921, that the enforcement of that mortgage would effect a preference of the claim of the dry goods company over the claims of other creditors of Mr. Welch of the same class? By proper pleadings and proceedings these questions were presented to, heard, and decided upon evidence and argument by the referee in bankruptcy, who answered them in the affirmative, and by the court below, which confirmed those answers and rendered a decree to the effect that the mortgage constituted a voidable preference, and that the claim of the dry goods company as a secured claim was disallowed, and its claim as the claim of a general creditor was allowed. From this decree the dry goods company has appealed.

[1] The mortgage and its lien upon the property described in it were presumptively just, legal, and valid. They were voidable only in case Mr. Welch was insolvent when they were created and the dry goods company then had reasonable cause to believe that their enforcement would cause the alleged preference. The trustee in bankruptcy alleged, and the burden was on him to prove, the insolvency and the reasonable cause of the dry goods company to believe that the alleged preference would result, and, if the trustee failed to make this proof by a fair preponderance of the competent evidence, the mortgage was not voidable. Calhoun County Bank v. Cain, 152 F. 983, 82 C. C. A. 114; In re Gaylord (D. C.) 225 F. 234, 239.

[2] The record discloses these facts: On May 9, 1921, Mr. Welch was an owner and dealer in real estate in a small town in Oklahoma. He owned about 800 acres of land and about 20 town lots, two store buildings, and two or three small houses. This real estate was the greater part of his property, and was worth from $35,000 to $50,000. He also owned and operated a stock of goods suitable for a village or country store. That stock of goods, his notes and accounts receivable, his implements, wagons, and fixtures, were worth from $8,000 to $12,000. He had been operating this store for more than six years; the dry goods company had been selling him goods during this time, and when he needed time to pay for them it had previously given him such time and taken a mortgage or mortgages on some of his real estate to secure his payment of his debt. His indebtedness on May 9, 1921, was about $40,000.

The question, whether or not he was insolvent, whether or not his property at its fair market value was of sufficient value to pay his debts, depended largely upon the fair value of his real estate. There were more than 20 separate pieces of this real estate. W have carefully read and compared the testimony of the witnesses as to the value of each of these pieces of property. These witnesses testified in August, 1923, more than two years subsequent to the date of the mortgage, to the value of this real estate on May 9, 1921, when the market value of real and personal property alike was much more than it was in August, 1923, and when it was obviously difficult for them to prevent the depleted values of 1923 from affecting their estimates of the values in 1921. It is evident, from an examination of the testimony of these witnesses, that Mr. Bird, the principal witness for the trustee, upon the question of the values of the real estate, estimated its value in some cases much too low. For example, he placed a value on a store building and two lots that were, and for many years had been, in May, 1921, renting for $30 a month, at $1,000. The rent from that property was 6 per cent. per annum on $6,000. He testified that the value of a lot and a two-story building, which on May 9, 1921, had been and were renting at $20 per month, at $1,750. This rental was 6 per cent. per annum on $4,000. He estimated the value of 280 acres of land at $40 an acre, $11,200. One of the witnesses for the dry goods company estimated this tract worth $50 an acre, or $14,000, and another estimated its value at $60 an acre. This witness testified that he was 50 years of age; that he had lived in

the county where this land was located 33 years, had been in the grocery and mercantile business, and for the last 12 or 14 years had been on a farm; that during this time he had bought and sold farms in the neighborhood, and that he was familiar with the market value of this 280 acres in 1921; that his own land adjoined this 280 acres; that Mr. Welch's tract was better than his; that he paid $50 an acre for his tract, and that he offered to buy this 280 acres of Mr. Welch for $60 an acre and he refused it. The testimony of these two witnesses seems to us to be more reliable and persuasive than that of Mr. Bird and one other witness who testified for the trustee upon this subject.

Turning to the value of the personal property on May 9, 1921, we find that the testimony for the trustee is that of Mr. Sternburg and Mr. Goodwin. The former took an inventory of the stock of Mr. Welch in August, 1921, about three months after the mortgage was made, and found it to consist, at the inventory prices, the prices at which it was bought, of dry goods, $2,211.81; shoes, $1,671.75; groceries, $843.18; dry goods and toilet articles, $1,381.81; hardware, $713.82; implements and wagons, $2,750.44; fixtures, $1,782.50—making a total of $11,335.50. Then he testified that he separated the implements from the remainder of the merchandise, because the former came from the John Deere Plow Company, and that the remainder of the stock was worth about $2,000; that it was old and dirty and consisted of remnants. He did not testify what this stock was worth on May 9, 1921. But Mr. Welch testified that he had been selling out of it up to August, and that he thought the stock was worth about $2,000 less in August than it was on May 9, 1921. Mr. Goodwin testified that he saw the stock just prior and just subsequent to May 9, 1921, and in his opinion it was worth about $2,000. Mr. Lewis, the trustee, testified that he collected $4,100 out of Mr. Welch's accounts receivable, and Mr. Welch testified that he had $3,000 due him from the Indians in May, 1921, that he could have collected, if he had been permitted to continue in business. There seems to be no escape from the conclusion that there must have been on May 9, 1921, a value of at least $4,000 in the stock of goods, $800 in implements and wagons, $800 in fixtures, and $5,000 in notes and accounts—aggregating $10,600.

It is not difficult, from the testimony in this case, by taking low estimates of the values of the real estate and the personal property of Mr. Welch on May 9, 1921, to prepare a plausible statement showing his indebtedness in excess of the value of his property. But a careful examination and thoughtful consideration of all the evidence has satisfied that its fair market value, at the time the mortgage was given, has not been proved by the evidence in this case to have been insufficient to pay his debts, and the fact has not been established that he was not solvent at that time.

[3] Counsel for the trustee here invoke the familiar rule that, where the referee and the District Court have considered conflicting evidence and have made a finding or decree thereon, it is presumptively right, and it may not be reversed, unless it clearly appears that they have fallen into some error of law, or have committed some serious mistake of fact. First National Bank v. Abbott, 165 F. 852, 91 C. C. A. 538. But in this case, over the objection and exception of the dry goods company that such evidence was hearsay and incompetent, the testimony of Miss Taylor, that she had made a personal inspection of and taken off from the tax books of Le Flore county the taxes due on the real property and personal property of Mr. Welch; that the total amount of his taxes on personal property for 1911 and 1912, with the penalties, was $5,600, was admitted. Again, statements of taxes on the real estate of Mr. Welch, tending to show that the total taxes claimed by the county treasurer of Le Flore county against the lands on which the Doyle Dry Goods Company held its mortgage were $3,262, were admitted. None of this evidence or testimony was admissible, and it came in under proper objections and exceptions.

[4] The books from which Miss Taylor testified she drew her information were not offered in evidence or produced in court, so that opposing counsel could examine them. There was no proof that these books had been regularly or correctly kept by officials of the county, or under their direction, or under the direction of their clerks, and Miss Taylor's testimony did not rise to the rank of oral hearsay or written hearsay. The pieces of paper received by the referee as evidence of the real estate taxes did not rise to the dignity of hearsay of any kind. There was no admission, or verification under oath or otherwise, of these pieces of paper, or the statements upon them; no testimony who made them or that they had any verity. Nevertheless it seems probable from these rulings that these statements about taxes were considered as evidence by the referee and the court below in reaching their con-

·clusion, when the fact was that the trustee had produced, and there was no competent ·evidence in the case of the amount of the taxes on either the real or personal property of Mr. Welch. An appellate court is not bound by findings of a referee or court on such a record.

[5] Did the dry goods company or its agent have reasonable cause to believe on May 9, 1921, that its mortgage, if enforced, would cause a preference of its claim over the claims of other creditors of Mr. Welch ·of the same class? Mr. Blanks was the secretary and vice president of the dry goods company and was in charge of its credits in May, 1921. He asked Mr. Welch to pay his debt to the company. Mr. Welch asked for an extension of time to pay it. Mr. Blanks requested him to come to Little Rock. Mr. Welch complied with his request, and when he reached there Mr. Blanks asked him for ·a statement of his debts, his property, and its value. Mr. Welch then stated to him that he had merchandise in hand worth $20,000, open accounts worth $3,500, and secured ac-·counts worth $6,500. He listed his various pieces of real estate, and stated his estimate, of the values thereof. He stated that he ·owed from $30,000 to $35,000. The value of his property, according to his statement, aggregated $72,000, and the amount of his ·debts about $35,000. His statement of the value of his various pieces of real estate, according to the evidence that has been taken since, was not above its fair market value at that time, with the exception that he owned only $^{13}/_{27}$ of 340 acres of land, worth $17,-000, and in his statement he claimed the ·ownership to that entire tract. After receiving this statement and talking with him, Mr. Blanks told him that he must pay or secure his debt, but that he would carry him until fall, just as he had done in years before, if he would give a mortgage upon some of his property to secure the payment of his debt. He then called Mr. Jean, the general field man of the company, talked over the matter with him, and sent him out to Oklahoma to ·check over Mr. Welch's statement and compare it with the property described in it. Mr. Jean went to Oklahoma and did this. He testified that he compared the. different pieces of property with Mr. Welch's statement, estimated the value of the store, the dwelling, and other real estate, and then took the mortgage; that, if he had thought Mr. Welch was in a bad condition, he would have reported it, but that he thought it was all right. Mr. Blanks further testified that this matter was handled in the usual way such

matters were conducted by the company, and that when the investigation was completed he was satisfied that Mr. Welch was perfectly good, and that he did not take the mortgage for any preference. ·

This transaction lacks many of the customary evidences of a voidable preference. The mortgage was not taken upon the stock of goods, or upon any of the equipment for carrying on the mercantile business of the mortgagor. It was not taken on all or nearly all the property of the debtor. It covered property worth less than one-fourth of the value of the debtor's property. It was not taken hurriedly or secretly. It was recorded on the day it was dated; and a thoughtful consideration of all the evidence relative to the transaction and all the facts and circumstances surrounding it has persuaded that the charge of the trustee that the dry goods company had reasonable cause to believe, when it took the mortgage, that its enforcement would effect a preference of its ·claim over the claims of other creditors of the same class, was not proved by a fair preponderance of the evidence in this case.

The decree .below must therefore be reversed, and the case remanded to the District Court, with directions to render a decree for the dry goods company for the relief prayed in its petition as intervener.