## WILLIAMS v. PLATTNER et al.
### No. 4174.

District Court, E. D. New York.

Feb. 2, 1931.

Alexander Levine, of New York City, for plaintiff.

Samuel L. Miller, of New York City, for defendant Anna Plattner.

GALSTON, District Judge.

The complainant seeks to recover a payment of $3,000 made by Edward Einhorn, Joseph Einhorn, and Louis Einhorn, trading as Einhorn Bros., to their codefendant, Anna Plattner, on the ground that a payment of like amount to her by Einhorn Bros. was a preferential payment.

A petition in bankruptcy was filed against the Einhorns, individually and as copartners, on November 30, 1928. The payment of $3,-000 to Anna Plattner was made by giving her three checks of the Etco Trading Company. One was certified November 24th, the second November 26th, and the third was cashed November 30th. At the time of making these payments, Einhorn Bros. were indebted to Anna Plattner in the sum of $3,000 for moneys which she had lent the company within thirty days prior to the first payment.

The questions for determination, therefore, are whether at the times indicated Einhorn Bros. were insolvent, and if, when the defendant, Anna Plattner, accepted these payments, she either knew that Einhorn Bros. were insolvent or had reasonable ground for believing that they were.

The witness Horowitz, a certified public accountant, having, pursuant to an order of the court in the bankruptcy proceedings, made an examination of the bankrupt's books, testified that on November 30, 1928, on the date of the filing of the petition, the liabilities amounted to $121,262.33, and the assets were $43,646.82, so that at least on November 30th Einhorn Bros. were hopelessly insolvent. There is no reason to believe that on November 24 and November 26, 1928, their financial condition was materially different. On the evidence, I conclude that, at the time of the making of the three payments to Anna Plattner, Einhorn Bros. were insolvent.

The evidence also leaves no doubt that the effect of the payments to her would be to give her a greater percentage upon her debt than other creditors of the same class would obtain as a result of the administration of the estate in bankruptcy.

There is no direct evidence that Anna Plattner knew that, at the time these payments were made, Einhorn Bros. were insolvent, or that the effect of the payments to her would be to give her a preferred position. The inquiry, therefore, must be as to whether she had reasonable grounds to believe that a preference was intended. In Boston National Bank v. Early (C. C. A.) 17 F.(2d) 691, 692, it was said:

"The decided cases furnish no certain and unerring rule by which this question may be determined. The rule laid down in Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, has in some cases been given a broader application than warranted by it. The rule to be deduced from all these decisions is whether the facts surrounding and attending the transfer alleged to be voidable were such as to cause a reasonably prudent man to believe that the bankrupt was insolvent when it was made, or were such as to put him on inquiry touching the solvency of the debtor, which inquiry would have disclosed insolvency."

It was also said in Re Clark (D. C.) 11 F.(2d) 540, 541:

"It has been repeatedly pointed out by the authorities that it is not necessary that

the preferred creditor shall have had actual knowledge, either of insolvency or that the effect of the transfer would be to effect a preference. It is sufficient to prove that the circumstances, taken together, were such as would naturally have led an ordinary business man to the true belief as to debtors' actual condition and as to the effect of the transfer. The test is: What inference would the ordinarily intelligent business man draw from the facts?"

From the facts adduced at the trial, it appears that Tessie Korotkin, a daughter of Anna Plattner, at the time of the filing of the petition in bankruptcy, and for three and a half years prior thereto, had acted as bookkeeper for Einhorn Bros. At that time she was unmarried and lived with her mother. She kept many of the books of account of the bankrupt, such as the customers' ledger, cash book, journal, purchase books, sales books, and check books. She was the only bookkeeper, though she was assisted once a month by an accountant, who kept a general ledger.

In respect to the transactions between her mother and her employers, she said her mother, as an accommodation to the Einhorns, had on October 17, 1928, given them her check for $5,000, and took their check in exchange some time after. This latter check was returned unpaid. It was to pay this accommodation loan in part that her mother was paid, the checks aggregating $3,000. The witness was unable to give the date of the unpaid check of $5,000, but recalled that it was some time in November.

The daughter apparently acted at least at times as the intermediary between her mother and the firm. The following is significant:

"Q. Did the Einhorns ask you to ask your mother to help them in the business? A. Yes.

"Q. And you went and asked your mother for the money? A. Sometimes I asked her and sometimes they asked her themselves.

"Q. Did you visit each other, the Einhorns and your family? A. Yes.

"Q. How often? A. We lived right near each other."

The defendant Anna Plattner was a sister-in-law of the defendant Edward Einhorn. Moreover, two sons of the defendant Anna Plattner worked in the business of Einhorn Bros. The witness, Tessie Korotkin, said that she and her brothers cashed their salary checks with her mother.

"Q. How many times did they come back? A. I do not believe they were—I do not think they were deposited.

"Q. Why not? A. My mother held them.

"Q. Why? A. She didn't always deposit them immediately. * * *"

It appeared later in the testimony that the wages for herself and her brothers were covered in one check:

"Q. Your mother held these checks received for salary by you and your brother prior to the last week, I mean to say in October and other times, did she? A. I believe she just had the one check on hand for the week previous to the bankruptcy.

"Q. But I am also calling your attention to checks given previously in October, September and November. Did your mother cash those checks for you from time to time? A. Yes.

"Q. Did she use to hold these checks? A. Yes."

The witness also testified that some of the checks given to other employees of Einhorn Bros. were cashed by her mother.

I conclude that Anna Plattner had adequate reason to know that Einhorn Bros. were in financial difficulties. One does not expect to get a bad check from a solvent concern. Certainly that was a circumstance which should have placed Anna Plattner on guard. Moreover, when the check came back dishonored, the daughter said:

"They tried to pay it to her, and all they could do was to give her the three, so she took the three."

Of course, it cannot be assumed that what the daughter knew about the financial affairs of Einhorn Bros. was the knowledge of the mother, since, after all, the daughter was not the agent of the mother. And so, too, the mere fact that one of the defendants was her brother-in-law does not charge her with knowledge of the insolvency of her codefendants; but the dishonoring of the check of $5,000 and the payment to her of the three checks aggregating $3,000 in the manner in which those payments were made necessarily led one to believe that she must have known that the Einhorns were insolvent and that the payment to her was preferential.

At any rate, plaintiff makes out a prima facie case. At the close of the plaintiff's prima facie case, the defendant Anna Plattner moved to dismiss the complaint. The motion was denied. The defendant elected to offer no proof. Decree for plaintiff.

Submit proposed decree.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.