No. 46,670

David G. Arst, Trustee for Wilmoth Construction, Inc., *Appellant*, v. The First National Bank and Trust Company of Salina, Salina, Kansas, *Appellee*.

(508 P. 2d 520)

Opinion filed April 7, 1973.

*David G. Arst*, of the the firm of Arst and Woodard, of Wichita, argued the cause and was on the brief for the appellant.

*Aubrey G. Linville*, of the firm of Clark, Mize, Linville & Miller, Chartered, argued the cause, and *C. L. Clark*, *James P. Mize*, and *C. Douglas Miller*, of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: David G. Arst is the trustee for Wilmoth Construction, Inc., a bankrupt corporation. In such capacity he brings this action against the First National Bank and Trust Company of Salina to set aside an alleged preference and to recover the sum of $10,645.95. The district court entered judgment in favor of the bank and Mr. Arst has appealed. We shall refer to the parties as plaintiff and defendant or as trustee and bank.

An early recital of the facts is in order. On December 24, 1966, three corporations, Wilmoth Construction, Inc., Construction Industries, Inc. and O. D. Wilmoth Excavating Contractor, Inc. borrowed the sum of $80,000 from the bank, and executed a promis-

sory note therefor. On the same day the three corporations executed security agreements covering vehicles, machinery and equipment used in their operations, furniture and fixtures, inventory, accounts receivable, contract rights and documents. A financing statement was filed in the office of the secretary of state December 28, 1966.

O. D. Wilmoth was president and principal stockholder of the three corporations and signed their joint note as surety. Effective December 31, 1966, Construction Industries, Inc. and O. D. Wilmoth Excavating Contractor, Inc. merged with Wilmoth Construction, Inc. In this appeal we will be concerned solely with the latter corporation, to which we will refer as Wilmoth, Inc., or bankrupt.

On April 1, 1967, Wilmoth, Inc., through its president, O. D. Wilmoth, executed and delivered a bill of sale to the bank conveying the chattels covered by the security agreements, and also assigned its retainages and accounts receivable, in consideration of which the bank canceled the indebtedness of Wilmoth, Inc., which at that particular time amounted to $77,642.50, including interest.

On April 26, 1967, the bank sold the construction machinery and equipment, including cars, trucks and tractors, to P & H Construction, Inc., which executed its chattel mortgage note therefor in the amount of $89,687.14. The record reflects that some of the machinery and equipment listed in the bill of sale was missing, and that the property generally was in bad condition and in need of repair. Evidence introduced at the trial indicated that some $30,000 was spent by P & H Construction, Inc. in making repairs.

P & H paid the bank slightly more than $11,000 on the principal due on its note and then, in the early part of 1968, it defaulted in its payments and returned the collateral to the bank. Subsequently the property was sold at public auction and a net amount of $19,-541.23 was received. This sum has also been credited on the note of P & H, making a grand total of approximately $30,500 which the bank has salvaged from the security. It has been stipulated that P & H Construction, Inc. is without assets or funds with which to satisfy the balance of the indebtedness owed to the bank; that no individual, officer, director or stockholder of P & H personally guaranteed repayment of the company's indebtedness; that the bank is without recourse on said obligation; and that it will realize only the proceeds of the public auction of the construction equipment.

The position taken by the trustee in this lawsuit is that Wilmoth, Inc., while insolvent, transferred all its assets to the bank; that the value of the assets transferred was $89,687.14 (the amount of P & H's note) while the indebtedness due the bank was only $79,041.19; that the value of the property turned over to the bank exceeded the balance due the bank by $10,645.95, and to this extent, at least, the transfer constituted a voidable preference under the federal bankruptcy laws; and that the bank is liable to the trustee for such excess.

At oral argument the trustee suggested that the transfer to the bank on April 1, 1967, constituted a voidable preference *in toto*. This contention was apparently advanced because of confusion concerning the date on which the financing statement was recorded as required by the Uniform Commercial Code. (K. S. A. 84-1-101, *et seq.*) However, we understand it is now agreed that the instrument was recorded December 28, 1966, which was more than five months before Wilmoth, Inc. was adjudicated a bankrupt. Accordingly, the trustee seeks to recover only the alleged $10,645.95 excess.

In entering judgment in favor of the defendant the district court found, among other matters, that "the plaintiff has not offered evidence tending to establish the required elements of a voidable preference herein." This finding we believe is of controlling significance in this appeal.

There is no actual dispute between the parties over what is required to establish a voidable preference under the Bankruptcy Act. (See 11 U. S. C. § 96.) Both litigants are in agreement that the elements of a preference are (1) a transfer of property (2) to or for the benefit of a creditor (3) for an antecedent debt (4) while the debtor is insolvent (5) within four months of bankruptcy (6) the effect of which is to enable the creditor to obtain a greater percentage of his debt than another creditor of the same class and (7) that the creditor so preferred had reasonable cause to believe the debtor was insolvent.

Althought the trial court did not specify which element, or elements, of a voidable preference had not been established by the trustee, the defendant argues with great vigor that no evidence whatsoever was offered to prove the insolvency of Wilmoth, Inc. on the transfer date, April 1, 1967, or that the bank had reasonable cause to believe the corporation was then insolvent. Both of these elements had to be established before the trustee could prevail, and the burden of proving the same rested with him.

We find the term "insolvency", as used in the Bankruptcy Act, defined in 11 U. S. C. § 1 (19):

"A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts;" (p. 44.)

This definition is frequently referred to as the "balance sheet definition", and it denotes a test which requires that assets be weighed against liabilities. The test thus differs from that which is customarily used to determine insolvency, *i. e.*, the inability to meet pecuniary obligations as they come due either through the means of available assets or by the honest use of credit. (*Engelkes v. Farmers' Co-operative Company*, 194 F. Supp. 319; *Feldman v. Capitol Piece Dye Works, Inc.*, 185 F. Supp. 426; *American National Bank & Trust Co. of Chicago, Ill. v. Bone*, 333 F. 2d 984.) In the case of *In re Bichel Optical Laboratories, Inc.*, 299 F. Supp. 545, the court expresses the principle in this fashion:

"'Under the "balance sheet test" of the Bankruptcy Act, "insolvency" results when the aggregate of a debtor's property is not sufficient at a fair valuation to pay his debts, which means a fair market price that can be available for payment of debts within a reasonable period of time, and "fair market value" implies a willing seller and a willing buyer.' (Case cited.)" (p. 547.)

No evidence was offered by the trustee to establish that, on April 1, 1967, Wilmoth, Inc. was insolvent in the sense the term is used in the Bankruptcy Act. So far as the record discloses, the trustee produced no testimony as to the bankrupt's financial condition; he proffered no proof either as to Wilmoth Inc.'s indebtedness or as to its assets. The record in this respect is entirely blank, even though it might be presumed the trustee was in possession of the facts concerning both.

The trustee, it is true, calls attention to a stipulation that on the critical date, April 1, 1967, the bank was advised that Wilmoth, Inc. did not have funds with which to pay maturing obligations. Such, however, is not the test of insolvency spelled out in the Bankruptcy Act. In *Farmers Bank of Clinton, Missouri v. Julian*, 383 F. 2d 314, the court said:

". . . The test for 'insolvency' under § 1 (19) of the Bankruptcy Act *is not the inability to meet current obligations but is the state of having liabilities exceed assets.* . . ." (p. 326.)

We are also aware of the additional stipulation that officers of the bank understood the bankrupt was in serious financial difficulty, although they were never advised it had a negative net worth on a balance sheet basis. This stipulation is not conclusive on the issue of Wilmoth Inc.'s insolvency on a *balance sheet basis*.

Mr. Arst, the trustee, bore the burden of proving that Wilmoth, Inc. was insolvent on the date the transfer was made. The rule is succinctly stated in 3 Collier on Bankruptcy, 14th Ed., § 60.30:

"As in the other elements of a preference, the burden of proof is on the trustee to show insolvency at the time of the transfer. . . ." (p. 893.)

One having the burden of proof is required to sustain the same by a preponderance of the evidence. This legal principle is just as binding on a trustee in bankruptcy as on any other party litigant. *(Jones v. Rowland,* 324 F. Supp. 494; 3 Collier on Bankruptcy, 14th Ed. § 60.62, p. 1123.) We are unable to say from the record before us that the trial court erred in finding that the trustee had failed to sustain the burden which was his. When Wilmoth, Inc. transferred the encumbered collateral to the bank, it reserved the right to complete its construction contracts with the City of Pittsburg and with the City of Abilene. From this the court might reasonably have inferred that sufficient assets remained in Wilmoth's hands to complete those two construction jobs.

Negative findings of fact, as this court has said, are not to be casually ignored or cast aside lightly. *(Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1, and citations therein set forth.) This general rule would appear applicable to the situation disclosed in the case at hand.

We are constrained to hold that error on the part of the court below has not been established and that judgment in favor of the defendant must be affirmed.

It is so ordered.