In re Blanks George PHIPPENS, Jr. d/b/a Buddy's Auto Sales, Bankrupt.

T. Larry EDMONDSON, Trustee, Plaintiff,

v.

Charles CALDWELL, Ind. and d/b/a Caldwell Motors, and Caldwell Motors, Inc., Defendant.

Bankruptcy No. 79–30899.

United States Bankruptcy Court, M. D. Tennessee.

April 28, 1980.

T. Larry Edmondson, Nashville, Tenn., for plaintiff.

G. Rhea Bucy, Nashville, Tenn., for defendant.

## MEMORANDUM

PAUL E. JENNINGS, Bankruptcy Judge.

The captioned adversary proceeding was commenced by the Trustee's complaint against Charles Caldwell, individually and allegedly doing business as Caldwell Motors, to avoid under § 67(d)(3) of the Bankruptcy Act a repossession of 14 automobiles from the bankrupt which occurred fifteen days before the filing of the bankrupt's voluntary petition. The complaint was later amended to allege invalidity of the repossession under sections 60 and 67(a) of the act as well as § 67(d)(3).

At the trial on the matter the Trustee moved to add Caldwell Cars, Inc., a Kentucky corporation, as a defendant and to proceed with trial of the complaint as so amended. Charles Caldwell, the president of Caldwell Cars, Inc., was present in court and through his attorney consented to the motion, Caldwell Cars, Inc. being deemed to have answered and denied all allegations of the complaint, as amended. Thereupon, the complaint, as amended, was tried as against the original defendant and Caldwell Cars, Inc. The debtor was not present.

The following shall constitute findings of fact and conclusions of law pursuant to F.R.B.P. 752.

The bankrupt, doing business as Buddy's Auto Sales in Dover, Tennessee, began buying automobiles owned by Caldwell Cars, Inc. at dealer auctions. Later, in 1975, the bankrupt bought directly from Caldwell Cars, Inc. (hereinafter Caldwell). Early in 1978 Caldwell and the bankrupt changed

the manner in which they had been doing business. The new procedure operated as follows. The two would agree on the vehicles and the price, the bankrupt would execute and deliver to Caldwell a draft drawn on a bank in Dover for each automobile. Caldwell would hold each draft along with the title documents until advised by the bankrupt that he had sold a particular vehicle. At that point Caldwell would deposit the draft and forward the title and bill of sale.

Except for the drafts, neither Caldwell nor the bankrupt signed any other written document of any kind relative to the transactions. There was no security agreement signed, no financing statement filed nor lien recorded. There was no written contract.

The debtor placed the vehicles obtained from Caldwell on the lot with those obtained from other sources. There was no physical evidence that cars on the lot belonged to anyone other than the bankrupt. He had complete control over the purchase price assigned to each auto. Any amount received in excess of the amount of the draft given Caldwell was retained as profit. The bankrupt had the right to return any automobile but would be required to make up the difference between the price originally agreed upon and the price obtained by Caldwell upon resale. The vehicles shipped to the debtor were carried on the Caldwell books as inventory; they were not shown as sales or accounts receivable.

Beginning January, 1979, the bankrupt paid $125.00 weekly to Caldwell. This amount was not credited to the purchase price of any automobile and was on one occasion characterized as "interest".[1]

On May 14, 1979, the bankrupt telephoned Mr. Caldwell and advised him to pick up the automobiles on which Caldwell held drafts. He stated that he would be responsible for the difference between the amount of the draft given for each auto

and the amount Caldwell could obtain upon resale. He further stated that he was considering going into bankruptcy. Caldwell removed from the lot that day 14 automobiles. The debtor filed his voluntary petition on May 29, 1979. Caldwell filed a proof of claim for the difference between the amounts of the drafts he held and the amount realized upon subsequent resale as well as costs of cleanup of each vehicle, and an amount representing a dishonored draft and another draft.

The court must decide first whether the arrangement between the bankrupt and Caldwell was a true consignment. If so, it is above attack by the Trustee; if not, it must be examined further to determine if the transfer constituted a preference which can be avoided by the Trustee.

An arrangement such as that between the bankrupt and Caldwell may be a true consignment or a conditional sale with a security interest retained by the seller. The latter is governed by both Article 2 and Article 9 of the Uniform Commercial Code. Official Comment No. 1 to T.C.A. 47–9–102 states that

> Transactions in the form of consignments or leases are subject to this Article [Chapter] if the understanding of the parties or the effect of the arrangement shows that a security interest was intended.

■ Case law has suggested a number of factors to be considered in determining the intention of the parties to an arrangement such as that at bar. The most obvious difference between a conditional sale and a consignment is that the vendee in the former undertakes an absolute obligation to pay for goods. *First National Bank v. Phillips*, 261 F.2d 588 (C.A. 5th, 1958). *Kemp-Booth v. Calvin*, 84 F.2d 377 (9th Cir. 1936); *In re Sachs*, 31 F.2d 799 (D.Md.1929). In some instances the consignee may be required to keep proceeds in a separate account, *In re Fabers, Inc.*, 12 UCC Rep. 126 (D.Conn.1972), or may not be allowed to

---

1. Testimony of Mr. Charles Caldwell at trial, p. 44.

> Q. Did the bankrupt agree to pay you interest, as such, relative to any of these vehicles?

> A. Just the $125 we was talking about.

commingle consigned goods with goods owned by the consignee, *Matter of Jon-el Shoe Corp.*, 9 CBC 388 (D.N.J.1976); *In re Gross Mfg. & Importing Co., Inc.*, 9 UCC Rep. 355 (D.N.J.1971).

■ A consignment may be used to effectuate retail price control. Where the consignor fixes the prices at which goods in the hands of the dealer must be sold with the dealer receiving a set percentage of the invoice price as commission, the arrangement reflects a true consignment and not a security device. *Columbia International Corp. v. Kempler*, 7 UCC Rep. 651 (Wis. 1970).

■ The Uniform Commercial Code clearly addresses the question of treatment of consigned goods vis-a-vis creditors of the consignee. Consigned goods in the hands of a dealer are treated as goods subject to "sale or return" and thus subject to claims of the dealer's creditors unless certain precautions are taken by the consignor. T.C.A. § 47-2-326(3).[2] As pointed out by Official Comment No. 2:

> . . . subsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer. As against such creditors words such as "on consignment" or "on memorandum", with or without words of reservation of title in the seller, are disregarded when the buyer has a place of business at which he deals in goods of the kind involved.

Thus, the intent of the parties is no longer determinative of the nature of the transaction. *Bufkor, Inc. v. Star Jewelry Co., Inc.*, 22 UCC Rep. 388 (Tex.Civ.App.1977); *Collier v. B & B Parts Sales, Inc.*, 9 UCC Rep. 151 (Tex.Civ.App.1971). Unless the consignor takes the required precautionary steps, the transaction will be deemed a sale or return with respect to the creditors of the person conducting the business.

■ In the instant case the bankrupt assumed an absolute obligation to pay for the automobiles. The return of the automobiles was accompanied by a requirement that he pay any difference between the amount of the draft held by Caldwell and the amount realized from the subsequent sale. Indeed the proof of claim filed by Caldwell reflects this requirement. In essence he was absolutely obligated to pay the purchase price. The bankrupt freely commingled his own automobiles with those on which Caldwell held notes. The bankrupt had complete control over the prices assigned to any vehicle. Additionally the debtor paid Caldwell $125 a week for a period of time, money which was not credited to the purchase price of any auto.

Caldwell did not comply with any of the precautionary measures outlined in the Uniform Commercial Code § 2-326. There was nothing filed which would indicate his ownership, no notice on the premises and no showing that the debtor was generally known by his creditors to deal in consigned

---

2. *Sale on approval and sale or return—Consignment sales and rights of creditors.*—(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
    (a) a "sale on approval" if the goods are delivered primarily for use, and
    (b) a "sale or return" if the goods are delivered primarily for resale.
(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery:
    (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
    (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
    (c) complies with the filing provisions of the chapter on Secured Transactions (chapter 9 of this title).

goods. Accordingly this court finds that the arrangement between the bankrupt and Caldwell reflects a conditional sales (sale or return) with retention of title to the automobiles by Caldwell as a security interest. As such, the vehicles were subject to the claims of the bankrupt. Defendant's claim of consignment is rejected.

■ The court must then determine if the repossession of the 14 automobiles 15 days before bankruptcy is a preference under § 60 of the Bankruptcy Act.[3] The Trustee must allege and prove every essential element resulting in the voidable preference, that is, he must show (1) a transfer by the debtor of his property, (2) to a creditor, (3) for an antecedent debt, (4) while insolvent, (5) within four months of bankruptcy, (6) resulting in that creditor obtaining a greater percentage of his debt than some other creditor of the same class. Further, in order to avoid the transfer, the trustee must show, (7) that the creditor receiving the preference had reasonable cause to believe that the debtor was insolvent. *Allender v. Southeast Tractor & Equipment Company*, 178 F.Supp. 413 (M.D. Tenn.1959); *Tumarkin v. Gallay*, 127 F.Supp. 94 (S.D.N.Y.1954); *In re Shaw*, 7 F.2d 381 (D.N.J.1925); *Doyle Dry Goods Co. v. Lewis*, 5 F.2d 918 (8th Cir. 1925); 3 (Part 2) Collier on Bankruptcy (14th ed.) ¶ 60.02, ¶ 60.62.

■ In the instant case the court concludes that the Trustee has not carried his burden of proof in showing insolvency of the debtor at the time of the repossession. As in the other elements of a preference, the burden of proof is on the Trustee to show insolvency at the time of the transfer, *Bumb v. Paulin Motor Co.*, 454 F.2d 1149 (9th Cir. 1972); *Allender v. Southeast Tractor & Equipment Company, supra; Pittman v. Union Planters National Bank & Trust Co. (In re National Cottonseed Products Corp.)*, 118 F.2d 211 (6th Cir. 1941), cert. den. 314 U.S. 632, 62 S.Ct. 65, 86 L.Ed. 507; *Arst v. First National Bank*, 211 Kan. 758, 508 P.2d 520 (1973).

Insolvency in the preference context is defined in § 1(19) which states that

A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts.

■ Adjudication alone is not conclusive proof of insolvency. *Gratiot County State Bank v. Johnson*, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1919); *Bumb v. Paulin Motor Co., supra*. There is no requirement of insolvency for the filing of a petition in bankruptcy. Proof of insolvency under § 60 contemplates a showing of the fair value of all the debtor's property, compiled by the use of balance sheets, financial statements, appraisals, expert testimony, and other affirmative evidence and compared to the amount of his debts. *Hassan v. Middlesex County National Bank*, 333 F.2d 838 (1st Cir. 1964), cert. den. 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344; *Langham, Langston & Burnett v. Blanchard*, 246 F.2d 529 (5th Cir. 1957); *McClung-Logan Equipment Co. Inc. v. Friedman*, 195 F.2d 516, 517 (4th Cir. 1952); *Pittman v. Union Planters Nat. Bank, supra; Rochford v. N.*

---

3. Section 60 a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

\*  \*  \*  \*  \*  \*

b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: . . .

**160**

Y. *Fruit Auction Corp.*, 116 F.2d 584 (2d Cir. 1940); *Williams v. Plattner*, 46 F.2d 467 (E.D.N.Y.1931); *People's National Bank v. Foltz*, 25 F.2d 295 (6th Cir. 1928); 1 Collier on Bankruptcy ¶ 1.19, 3 Collier (Part 2) ¶¶ 60.30, 60.31.

■■■ While normally the court may take judicial notice of the facts disclosed in the papers on file in the bankruptcy proceeding even when they are not offered in evidence, it may not use them in determining insolvency. *In re Aughenbaugh*, 125 F.2d 887 (3rd Cir. 1942); *Matter of Bowen*, 58 F.Supp. 286 (E.D.Pa.1944); Norton & Russell, Evidence under Bankr. Act § 2–01 (1978).

In the instant case the court has before it meager evidence on the issue of insolvency. It may not take judicial notice of the bankrupt's schedules which were not introduced into evidence. The bankrupt himself was not present at the trial and thus contributed no information. The proof of claim filed by the defendant contains a dishonored draft dated more than three months before the petition was filed. The court cannot base a finding of insolvency on such scant documentation. The bankrupt's statement to Caldwell of his intention to file bankruptcy clearly fulfills § 60b but that is a different element from the bankrupt's actual insolvency. The court must of necessity find that the Trustee did not prove that the repossession was made while the bankrupt was insolvent. The issue must be considered on the record before the court.

The Trustee's failure to prove insolvency is likewise fatal to any action under § 67(d)(3). The court fails to see any applicability of § 67(a). Nor does the court see how the statutes cited by the trustee (T.C.A. § 48–815 and T.C.A. § 48–512) impose any personal liability on the individual defendant in this case. The holding in this case may, however, affect the recovery of Caldwell as it relates to the proof of claim filed in this matter.

The complaint must be DISMISSED.