**Linda Cheryl KNIGHT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 3–91–0617.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 15, 1993.

**1244**

John Edward Rodgers, Lackey, Rodgers, Price & Snedeker, Nashville, TN, for plaintiff.

Michael J. Martineau, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ECHOLS, District Judge.

Presently pending before this Court are the parties' Cross–Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons more fully outlined herein, the Plaintiff's Motion for Summary Judgment is hereby DENIED, the Defendant's Motion for Summary Judgment is hereby GRANTED, and this action is accordingly DISMISSED.

The Plaintiff, Linda Cheryl Knight ("Knight"), filed this action against the Defendant, the United States of America ("US"), pursuant to 26 U.S.C. § 7426(a)(1) (1988) seeking to recover a gold charm bracelet which was seized by the Internal Revenue Service ("IRS") in its execution of several jeopardy assessments and levies upon the property of Tony and Susan Alamo. Knight alleges that she purchased the charm bracelet twenty-two years ago and maintained possession of the charm bracelet until April 1990, when she was forced to consign the bracelet in order to pay her taxes. At the time of consignment, Knight valued the bracelet at approximately thirty five hundred dollars ($3,500.00).

The record reveals that Knight contacted a friend, Dan Hoffman, who made arrangements to consign the bracelet to The Alamo of Nashville ("The Alamo"), a store which specialized in western clothing and accessories. Hoffman then transferred the bracelet to The Alamo, and supplied Knight with a receipt from The Alamo dated April 11, 1990. The receipt contained a short description of the bracelet, a note indicating that the bracelet was on consignment from Knight, and

Hoffman's signature. According to Knight, The Alamo agreed to try to sell the bracelet for no less than thirty five hundred dollars ($3,500.00). In turn, the Alamo would retain any profit which it realized over and above that amount in exchange for its consignment services.

Pursuant to a Notice of Federal Tax Lien dated June 11, 1990, and a Notice of Seizure dated June 22, 1990, the IRS made jeopardy assessments against the Tony and Susan Alamo Foundation, Inc, individually and as a transferee of Tony and Susan Alamo; Twentieth Century Holiness Tabernacle Church, Inc., transferee of Tony and Susan Alamo Foundation, Inc., and Tony and Susan Alamo; and Music Square Church, Inc., transferee of Tony and Susan Alamo Foundation, Inc., and Tony and Susan Alamo, for unpaid federal income tax liabilities for 1977, 1978, 1979, and 1980, in the total amount of $4,998,-508.00. The IRS additionally executed jeopardy levies against the Tony and Susan Alamo Foundation, Inc., for unpaid employment tax liabilities for the third and fourth quarters of 1981, the four quarters of 1982 through 1985, inclusive, and the first quarter of 1986, in the total amount of $2,249,634.75. These jeopardy assessments and levies were executed pursuant to 26 U.S.C. § 6861 (1988). As a result of these jeopardy assessments and levies, the IRS seized all of The Alamo's merchandise, including Knight's charm bracelet.

The Tony and Susan Alamo Foundation, Inc. subsequently challenged the reasonableness of the IRS seizure pursuant to 26 U.S.C. § 7429(b)(3)(A)–(B) (1988), and requested abatement of the jeopardy assessments and levies upon which the seizures were based. *See Tony and Susan Alamo Foundation, Inc. v. United States,* Civ.Action No. 3–90–00901 (M.D.Tenn. Nov. 1, 1991). In the context of this separate action, this Court found that the June 22, 1990 seizures, and the jeopardy assessments and levies upon which they were based, were unreasonable. *Id.* As such, this Court ordered the abatement of both the jeopardy assessments and jeopardy levies pursuant to 26 U.S.C. § 7429(b)(4) (1988).

Both parties in this case have filed Motions for Summary Judgment. Knight primarily bases her Motion for Summary Judgment upon this Court's previous finding that the jeopardy assessments and jeopardy levies pursuant to which her bracelet was seized were unreasonable and should be abated. Knight contends that, as a matter of law, this Court's previous abatement of these jeopardy assessments and jeopardy levies entitles her to recover the bracelet from the IRS. The IRS contends that, even if the bracelet was seized pursuant to the jeopardy assessments and levies which this Court subsequently abated as unreasonable,[1] Knight's action for recovery of the bracelet should nonetheless be dismissed because she has failed to prove that a valid and legal consignment occurred when she transferred her bracelet to the Alamo in April 1990. As such, Knight's failure to prove the existence of a legally valid consignment renders her present claim for return of the bracelet meritless.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelly*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate. With this standard in mind, the Court will now address the arguments raised by the parties in their respective Motions for Summary Judgment.

■ The Internal Revenue Code provides a cause of action for any claimant, other than the taxpayer, who contends that his or her property was wrongfully levied upon by the federal government:

If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1) (1988). Pursuant to the Code's express language, a claimant must satisfy three requirements in order to establish their case:

First, the person must not be one "against whom is assessed the tax." Second, the person must claim a legally cognizable "interest" in the property. Third, the property must have been "wrongfully levied upon."

*Arford v. United States*, 934 F.2d 229, 232 (9th Cir.1991) (quoting 26 U.S.C. § 7426(a)(1) (1988)).

■ In this case, it is undisputed that Knight is not the person against whom the taxes were assessed. In addition, this Court's previous finding that the jeopardy assessments and levies pursuant to which the bracelet was seized were unreasonable, and its abatement of those assessments and levies, renders the IRS' seizure of the bracelet a "wrongful levy" as that term is defined in the statute.

---

1. The IRS initially argued that Knight's Motion for Summary Judgment should be denied because the bracelet at issue in this case was not seized pursuant to the jeopardy assessments and levies which were the subject of this Court's subsequent Order of Abatement. A review of the record indicates, however, that the Defendant's contention is without merit. Knight's bracelet was seized on June 22, 1990 pursuant to the same jeopardy assessments and levies which this Court subsequently abated as unreasonable. Indeed, the bracelet is specifically listed on a computer printout attached to the June 22, 1990 Notice of Seizure as one of many items seized on that date by IRS officials. (Docket Entry No. 14, Exh. A). The IRS' contention that the bracelet was not the subject of the jeopardy assessments and levies which this Court subsequently abated as unreasonable is not supported by the record, and will not be further considered herein.

■ The only remaining issue is whether Knight can establish that she has a legally cognizable property interest in the bracelet as the original consignor. The Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law . . . ." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); *see also United States v. Wingfield,* 822 F.2d 1466, 1473 (10th Cir.1987), *cert. dismissed sub nom. County of Boulder v. United States,* 486 U.S. 1019, 108 S.Ct. 1762, 100 L.Ed.2d 222 (1988). As such, this Court must look to Tennessee law to determine the nature, extent, and validity of Knight's asserted property interest in the bracelet.

■ Tennessee's Commercial Code specifically defines the relative rights of a consignor and consignee when a creditor of the consignee claims an interest in the consigned goods. Tennessee law requires the consignor to take certain affirmative steps in order to protect their interest in the consigned goods against claims by the consignee's creditors while the goods are in the consignee's possession. The parties' intent "is no longer determinative of the nature of the transaction." *In re Phippens,* 4 B.R. 155, 158 (Bankr.M.D.Tenn.1980). As noted in Tenn. Code Ann. § 47–2–326(1)–(3) (1992):

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

    (a) a "sale on approval" if the goods are delivered primarily for use, and

    (b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; *goods held on sale or return are subject to such claims while in the buyer's possession.*

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, *then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subjection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum."* However, this subsection is *not applicable* if the person making delivery:

    (a) *complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign,* or

    (b) *establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others,* or

    (c) *complies with the filing provisions of this chapter on Secured Transactions (chapter 9 of this title).*

(emphasis added). As noted in the drafter's Comments to the Official Text of the statute:

[S]ubsection (3) *resolves all doubts as to the nature of the transaction in favor of the general creditors of the buyer.* As against such creditors words such as "on consignment" or "on memorandum," with or without words of reservation of title in the seller, are disregarded when the buyer has a place of business at which he deals in goods of the kind involved. *A necessary exception is made where the buyer is known to be engaged primarily in selling the goods of others or is selling under a relevant sign law, or the seller complies with the filing provisions of Article [Chapter] 9 as if his interest were a security interest.*

Tenn.Code Ann. 47–2–326(3) cmt. 2 (1992) (emphasis added).

■ Knight, as the claimant, bears the burden of proving that the government's seizure of her property was improper, and that it should be overturned. *See Schnarr v. United States,* 795 F.Supp. 934, 937 (E.D.Mo. 1992) (quoting *Valley Fin., Inc. v. United States,* 629 F.2d 162, 171 n. 19 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981)); *see also William L. Comer Family Equity Trust v. United States,* 732 F.Supp. 755, 758 (E.D.Mich.1990), *aff'd,* 966 F.2d 1455 (6th Cir.1992). As previ-

ously discussed, Tennessee law presumptively favors the rights of a consignee's creditors in consigned goods over the rights of the original consignor unless the consignor takes one of the three required precautionary steps to protect their interest. *See In re Phippens,* 4 B.R. 155, 158 (Bankr.M.D.Tenn.1980) ("Unless the consignor takes the required precautionary steps, the transaction will be deemed a sale or return with respect to the creditors of the person conducting the business."). As such, in order to prove the legitimacy and validity of her property interest in the bracelet which she consigned to The Alamo, Knight must prove that she either 1) evidenced her property interest in the bracelet with a sign; or 2) consigned the bracelet to a business which is generally known by its creditors to be "substantially engaged" in the consignment business; or 3) complied with the filing requirements of Tennessee's law on secured transactions in order to formally protect and perfect her security interest in the bracelet. Tenn.Code Ann. § 47–2–326(3) (1992).

It is undisputed that neither Knight nor The Alamo marked the bracelet with any type of sign which would have indicated to customers or any other third party that the bracelet was on consignment from Knight. It is likewise undisputed that Knight did not make the required filings with the State in order to protect and perfect her security interest in the bracelet. Finally, the affidavits of employees of The Alamo indicate that it was not "substantially engaged" in the consignment business. Indeed, the employees' affidavits confirm that The Alamo only rarely accepted goods on consignment, and would only do so on those rare occasions when the consignor was a person with whom the employees were personally acquainted. The Alamo's practice of accepting items on a consignment basis was so rare, in fact, that it did not even keep any records which described the consigned goods, nor any documents defining the particular arrangement which it made with the consignor regarding the sale of the goods in question. Based upon these undisputed facts, this Court is of the opinion that Knight has failed to satisfy her burden of proving that The Alamo was "substantially engaged" in the consignment business.

Tennessee's law is clear and unequivocal. In order to protect his or her property interest in consigned items from the otherwise superior claims of the consignee's creditors, a consignor must take one of the three cautionary steps explicitly described in the statute. A failure to take one of these three steps will result in a finding that the consignor does not maintain a legitimate and valid property interest in the consigned goods for the purpose of recovering those goods from a rightful creditor of the consignee. In this case, the undisputed facts indicate that Knight took none of the three precautionary steps to protect her property interest in the bracelet. Therefore, the IRS, as a rightful creditor of the consignee, was legally entitled to seize the consigned goods in satisfaction of the consignee's debt. Since Knight has failed to prove that she has a legally cognizable property interest in the bracelet under Tennessee law, her challenge to the government's seizure of the consigned bracelet fails as a matter of law.

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is hereby DENIED, the Defendant's Motion for Summary Judgment is hereby GRANTED, and this action is accordingly DISMISSED.